IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

**LUXURY HOTELS INTERNATIONS OF PUERTO RICO INC. d/b/a THE RITZ-CARLTON SAN JUAN HOTEL, SPA & CASINO**

 **Plaintiff,**

**v.**

**MARIBELLE TOSSES**

**Defendant**.

**CASE NO. 14-1857 (GAG)**

**OPINION AND ORDER**

Luxury Hotels International of Puerto Rico d/b/a The Ritz-Carlton San Juan Hotel, Spa and Casino ("Ritz-Carlton"), filed the instant action invoking the court's diversity jurisdiction under 28 U.S.C. § 1332, requesting that the court declare valid and enforceable an arbitration agreement signed between the parties in an ongoing proceeding before the Puerto Rico Court of First Instance, pursuant to Section 4 of the Federal Arbitration Act, 9 U.S.C. § 4, the Declaratory Judgment Act, 28 U.S.C. § 220, and Rule 56 of the Federal Rules of Civil Procedure, FED. R. CIV. P R. 56. See Docket No. 1.

**I.    Relevant Procedural Background**

On June 5, 2013, Maribelle Tosses ("Tosses"), Ritz-Carlton's former employee,[1] filed a civil action against its former employer in the Puerto Rico Court of First Instance, Case No. FPE-

---

[1] Tosses was employed by Ritz-Carlton from March 2006 to November 2011. (Docket No. 1 ¶ 9.)   At the beginning of her employment, Tosses received and signed "The Ritz Carlton Employee Agreement", which

1

**Civil No. 14-1857 (GAG)**

2013-0368 (407), claiming wrongful discharge, gender discrimination and retaliation under Puerto Rico Laws Nos. 80, 100, and 115, respectively. (Docket No. 1.) Tosses' state court action, where she requested one million dollars in damages, was filed under Puerto Rico's Summary Proceeding for Labor Claims. P.R. LAWS ANN. tit. 32, §§ 3118, *et seq*. (Docket No. 1.)

Ritz-Carlton moved to dismiss Tosses' complaint before the Puerto Rico Court of First Instance pursuant to Section 2 of the Federal Arbitration Act,[2] arguing that the court lacked jurisdiction to entertain Tosses' claims because the parties are bound by an arbitration agreement, and thus, Tosses' claims should be dismissed and her claims shall be arbitrated. (Docket Nos. 1 ¶ 16; 1-4.) On June 30, 2013, the Puerto Rico Court of First Instance denied Ritz-Carlton's motion to dismiss, and entered partial default judgment due to Ritz-Carlton's failure to answer Tosses' complaint within the ten-day deadline, as mandated by Tit. 32, §§ 3118, *et seq*. Id. ¶ 17. As a result, on November 26, 2014, Ritz-Carlton filed the instant suit against Tosses, under the Declaratory Judgment Act, 28 U.S.C. § 220, and section 4 of the Federal Arbitration Act, 9 U.S.C. § 4, requesting that this court "declare the validity of the arbitration agreement executed by the parties and its enforceability" in the state court action. (Docket No. 1 at 5.) Ritz-Carlton contends

---

contains an arbitration clause. Id. By way of said agreement, Tosses agreed to "[a]rbitrate any and all unjust dismissal, discrimination and/or retaliation claims under the Rules of the American Arbitration Association." Id. ¶ 12.

[2] Section 2 of the Federal Arbitration Act states that:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

that Tosses' "refusal to arbitrate her claims constitutes a violation of the Federal Arbitration Act, 9 U.S.C. § 4." Id. ¶ 18. It therefore seeks a declaratory judgment validating the arbitration agreement and its enforceability in the state court proceeding from this court. Ritz-Carlton posits that the state court, in willful disregard of federal law, did not rule on the issue of whether the arbitration agreement invoked was valid and/or enforceable. Id. Ritz-Carlton further argues that Tosses' refusal to arbitrate her claims, in violation to the Federal Arbitration Act, exposes it to clear and concrete damages. Id. ¶ 22. As such, Ritz-Carlton requests that this court declare the validity of the arbitration agreement executed between the parties and its enforceability in the proceeding pending before the Puerto Rico Court of First Instance. Id.

**II.   Standard of Review**

"*Sua sponte* dismissals are strong medicine, and should be dispensed sparingly." Gonzalez-Gonzalez v. United States, 257 F.3d 31, 37 (1st Cir. 2001). The general rule is that the party facing a *sua sponte* dismissal must have an opportunity to amend the complaint or otherwise respond. Chute v. Walker, 281 F.3d 314, 319 (1st Cir. 2002). The First Circuit has stated that *sua sponte* orders of dismissal are upheld "only if the allegations contained in the complaint, taken in the light most favorable to the plaintiff, are patently meritless and beyond all hope of redemption." Gonzalez-Gonzalez, 257 F.3d at 37; see also Swanson v. Coffeen, 952 F. Supp. 2d 390, 393 (D.P.R. 2013).

**III.   Discussion**

The remedy requested by Ritz-Carlton in its complaint, and the ongoing state proceedings raised a red flag to the undersigned, in regards to the court's jurisdiction over the matter. As such, shortly after the filing of the complaint, this court ordered Ritz-Carlton to show cause "as to why

this case shouldn't be dismissed on *Rooker–Feldman* grounds or by way of any applicable abstention doctrine." See Docket No. 5. Ritz-Carlton complied with the court's order shortly thereafter, filing a brief in support of its claims. Docket Nos. 6 & 7. After a careful review of Ritz-Carlton's arguments in support of its claims, the undersigned finds that what Ritz-Carlton is seeking here is nothing other than an attempt to review a judgment entered by the state forum and thus, deems this request improper for the following reasons.

      a.   The *Rooker-Feldman* doctrine

"[T]he *Rooker–Feldman* doctrine implicates the court's subject matter jurisdiction."[3] The *Rooker-Feldman* doctrine establishes that "lower federal courts possess no power whatever to sit in direct review of state court decisions. If [the party seeking relief] was adversely affected by the state court's decision, it was free to seek vindication of its federal right in the [state] appellate courts and ultimately, if necessary, in this court." Int'l Cement Aggregates, Inc. v. Antilles Cement Corp., 62 F. Supp. 2d 412, 415 (D.P.R. 1999) (citing Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Eng'rs, 398 U.S. 281, 296 (1970); 28 U.S.C. § 1257).

The *Rooker–Feldman* doctrine applies to state or territorial court judgments to which the federal courts would accord preclusive effect, and the federal courts "can ascribe no greater preclusive force to a state court judgment than would the courts of that state." Torres-Heredia v. Lopez-Pena, 708 F. Supp. 2d 148, 154 (D.P.R. 2008) (citing Cruz v. Melecio, 204 F.3d 14, 21 n. 5 (1st Cir. 2000)). This doctrine takes its name from two Supreme Court cases; one Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and sixty years later, District of Columbia Court of

---

[3] Mills v. Harmon Law Offices, P.C., 344 F.3d 42, 44 n.1 (1st Cir. 2003) ("The *Rooker–Feldman* doctrine is jurisdictional in nature; if a case is dismissed because the *Rooker–Feldman* doctrine applies, it means the court has no subject matter jurisdiction to hear the case.); see also Lance v. Coffman, 549 U.S. 437 (2007) (holding that "*Rooker–Feldman* concerns a district court's subject-matter jurisdiction.").

Appeals v. Feldman, 480 U.S. 462 (1983). In Rooker, the Supreme Court affirmed the district court's conclusion that jurisdiction was lacking, stating that: "[u]nder the legislation of Congress, no court of the United States other than this court could entertain a proceeding to reverse or modify the judgment of a state court for errors of that character." 263 U.S. at 416; see also Torres-Heredia, 708 F. Supp. 2d at 154.

In turn, Feldman reaffirmed the Rooker holding that only the Supreme Court has jurisdiction to review decisions of state courts; therefore, district courts have no jurisdiction to entertain challenges to state-court decisions, even if the challenges alleged are constitutional in nature. Feldman, 460 U.S. at 476. The effect of the *Rooker-Feldman* doctrine is to provide an independent basis for prohibiting **collateral attack** on state court judgments. Rooker, 263 U.S. at 415-416; Feldman, 460 U.S. at 476; Badillo-Santiago v. Naveira-Merly, 378 F.3d 1, 6 (1st Cir. 2004); Wilson v. Shumway, 264 F.3d 120, 125 (1st Cir. 2001); Hill v. Town of Conway, 193 F.3d 33, 34-35 (1st Cir. 1999); Torres-Heredia, 708 F. Supp.2d at 154.

Accordingly, "federal courts below the United States Supreme Court may not exercise appellate jurisdiction over the decisions and/or proceedings of state courts, including claims that are "inextricably intertwined" with issues decided in state court proceedings." Feldman, 460 U.S. at 486-87. Courts have consequently adopted the rationale "that a federal claim is "inextricably intertwined' with a state court judgment and, thus, implicates *Rooker–Feldman* when 'the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.'" Torres-Heredia, 708 F. Supp. 2d at 154 (quoting Executive Arts Studio, Inc. v. City of Grand Rapids, 391 F.3d 783 (6th Cir. 2004); DLX, Inc. v. Kentucky, 381 F.3d 511 (6th Cir. 2004).). Where federal relief can only be predicated upon a conviction that the state court was wrong, it is

difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment. Id. (citing Peterson Novelties Inc. v. City of Berkley, 305 F.3d 386, 391 (6th Cir. 2002); Torres-Heredia, 708 F. Supp. 2d at 154.

As explained above, at the state forum's proceedings, Ritz-Carlton moved to dismiss Tosses' state-court claims by arguing that the arbitration agreement was binding, and that arbitration should be compelled. (Docket No. 1-4.) In its motion to dismiss, Ritz-Carlton requested the enforcement of the arbitration agreement, pursuant to Section 2 of the Federal Arbitration Agreement. Id. The state court denied Ritz-Carlton's motion to dismiss. (Docket No. 1-5.) Shortly thereafter, Ritz-Carlton turned to the federal forum for a second opinion, seeking the same relief sought at the state level, namely, a declaration of the validity and enforcement of the arbitration agreement in question, pursuant to section 4 of the Federal Arbitration Act, 9 U.S.C. § 4.[4] See Lifescan, Inc. v. Premier Diabetic Servs., Inc., 363 F.3d 1010, 1012 (9th Cir. 2004) ("District court's role under § 4 is limited to determining whether valid agreement to arbitrate exists and, if so, whether the agreement covers the dispute at hand, if it does, the court must enforce the agreement.").

The issue presently before this court falls exactly within the *Rooker–Feldman* principle. The present case constitutes Ritz-Carlton's second request for a court order declaring the validity and enforcement of the arbitration agreement that was already requested by Ritz-Carlton and

---

[4] Section 4 of the Federal Arbitration Act provides that:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.

denied by the state forum. Consequently, Ritz-Carlton's "federal claim" is nothing more than a collateral attack of the state court's partial default judgment. In other words, Ritz-Carlton is seeking to appeal a state court judgment, which means that Ritz-Carlton's "federal claim" is predicated upon its belief that the state court's ruling denying Ritz-Carlton's request for arbitration was erroneous. If this court were to grant the remedy sought by Ritz-Carlton, it would be reversing the judgment entered by the state forum. This, undoubtedly, constitutes a prohibited appeal, under *Rooker–Feldman*.

In light of the above, the undersigned is in no position to review the state court's judgment. If this court were to entertain the issue, it would be passing judgment as to whether or not the state court erred by declining to recognize the validity and enforceability of the arbitration agreement signed between the parties. Accordingly, this court lacks jurisdiction to entertain Ritz-Carlton's claims. In the interests of federalism and comity, Ritz-Carlton's claims are hereby **DISMISSED**.

b. Ritz- Carlton's Removal argument

Notwithstanding the above, the court turns to briefly address a separate jurisdictional argument that Ritz-Carlton raises. Ritz-Carlton argues that it was "deprived of its right to remove the [state action] to this court" because Tosses concealed the fact that she was a resident of another state. (Docket No. 6 at 7-8.) Hence, Ritz-Carlton is of the belief that the state action could have been removed to the federal forum, pursuant to 28 U.S.C. § 1446, had Tosses revealed her domicile. This argument, however, is doomed by Ritz-Carlton's own admission.

"For purposes of diversity jurisdiction under 28 U.S.C. 1332(a) (1), state citizenship is the equivalent of domicile." Hawes v. Club Ecuestre El Comandante, 598 F.2d 698, 701-02 (1st Cir. 1979). Ritz-Carlton contends that, on August 15, 2014, it learned for the first time that on or about

June 2014, Tosses moved to Connecticut. Tosses initiated the state court action on June 5, 2013. According to Ritz-Carlton's representations, at the time of filing of the state action and at the time said action could have been removed –by July 5, 2013, thirty days after the filing of the complaint– Tosses remained, at all relevant times, domiciled in Puerto Rico. "Domicile at the time suit is filed is the test and jurisdiction once established is not lost by a subsequent change in citizenship." Hawes, 598 F.2d at 701; see also Diaz-Rodriguez v. Pep Boys Corp., 410 F.3d 56, 58 (1st Cir. 2005) (holding that diversity of citizenship is not a basis for removal unless diversity is complete; "that is, when no plaintiff is a citizen of the same state as any defendant."). Consequently, the parties to the state action were never diverse; hence, diversity jurisdiction, that would have allowed the removal of the state action to the federal forum, never existed.

**IV.     Conclusion**

For the foregoing reasons, Ritz-Carlton's complaint is hereby **DISMISSED**.

**SO ORDERED.**

In San Juan, Puerto Rico this 23rd day of June, 2015.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge